674 S.E.2d 145

David H. BARTON, Employee, Claimant,

v.

William Ian HIGGS d/b/a Iyanel Enterprises and Total Home Exteriors, Inc., Employers, and Key Risk Insurance and SC Uninsured Employers Fund, Carrier, Defendants,

of whom Total Home Exteriors, Inc., Employers, and Key Risk Insurance are the Respondents,

and

SC Uninsured Employers Fund is the Petitioner.

No. 26594.

Supreme Court of South Carolina.

Heard Nov. 18, 2008.

Decided Feb. 9, 2009.

Rehearing Denied April 6, 2009.

Amy V. Cofield, of Lexington, and Latonya Dilligard Edwards, of Columbia, for Petitioner.

David A. Wilson and Michael A. Farry, both of Horton, Drawdy, Ward & Jenkins, of Greenville, for Respondents.

Chief Justice TOAL:

In this workers' compensation case, the court of appeals held that Petitioner South Carolina Uninsured Employers' Fund (the Fund) was responsible for paying benefits to an injured employee. *Barton v. Higgs*, 372 S.C. 109, 641 S.E.2d 39 (Ct.App.2007). We granted a writ of certiorari to review that decision and now reverse.

## FACTUAL/PROCEDURAL BACKGROUND

David Barton (Claimant) was employed by William Higgs d/b/a Iyanel Enterprises (Iyanel), which served as the roofing subcontractor for Respondent Total Home Exteriors (Total Home). On November 22, 2003, Claimant sustained a compensable injury when he fell from a roof. At the time of the accident, Iyanel did not have workers' compensation insurance, and thus, as the higher-tier contractor, Total Home remained liable to pay Claimant benefits. Total Home sought to transfer liability to the Fund pursuant to S.C.Code Ann. § 42–1–415 (Supp.2007).

At the hearing before the single commissioner, the president of Total Home testified that he received a Certificate of Insurance from Higgs showing that Iyanel had a workers compensation policy in effect from September 13, 2003 through September 13, 2004. The Certificate listed Total Home as the certificate holder and Jackie Perry Insurance Agency (Insurance Company) as the producer, but the Certificate was not signed in the blank listed for "Authorized Representative." Higgs testified that he paid for the workers' compensation insurance and that an employee of the Insurance Company issued the Certificate of Insurance. Nonetheless, coverage was never bound, resulting in Iyanel not being insured on the date of the accident.

The single commissioner found that Iyanel had attempted in good faith to obtain workers' compensation insurance and presented the Certificate of Insurance to Total Home, upon which Total Home relied in good faith. Accordingly, the single commissioner ruled that liability should be transferred to the Fund. The full commission, the circuit court, and the court of appeals affirmed the single commissioner's decision to transfer liability.

We granted a writ of certiorari and the Fund presents the following issue for review:

Did the court of appeals err in affirming the decision to transfer liability to the Fund pursuant to § 42–1–415?

## STANDARD OF REVIEW

When reviewing an appeal from the workers' compensation commission, the appellate court may not weigh the

evidence or substitute its judgment for that of the full commission as to the weight of evidence on questions of fact. *Therrell v. Jerry's Inc.*, 370 S.C. 22, 26, 633 S.E.2d 893, 894–95 (2006). However, the appellate court may reverse the full commission's decision if it is based on an error of law. *Id.* The issue of interpretation of a statute is a question of law for the Court. *Catawba Indian Tribe of South Carolina v. State*, 372 S.C. 519, 524, 642 S.E.2d 751, 753 (2007).

## LAW/ANALYSIS

■ The Fund argues that the court of appeals erred in affirming the decision to transfer liability because the Certificate of Insurance was unsigned. We agree.

■ Under the Workers' Compensation Act, a general contractor is considered the "statutory employer" of a subcontractor's employees and is liable to pay workers' compensation benefits to the subcontractor's employee injured on the job. *See* S.C.Code Ann. § 42–1–410 (2006). Thus, "[t]he employee of the sub-contractor may look to the prime contractor for workers' compensation benefits without regard to whether the sub-contractor is covered by a workers' compensation insurance policy." *Freeman Mechanical, Inc. v. J.W. Bateson Co., Inc.*, 316 S.C. 95, 97, 447 S.E.2d 197, 198 (1994). The purpose of this statute is to protect the employee and assure coverage in the event of an injury.

In 1996, however, the Legislature created a narrow exception to this rule which provides that the general contractor may transfer the responsibility to pay benefits:

[U]pon the submission of documentation to the commission that a contractor or subcontractor has represented himself to a higher tier subcontractor, contractor, or project owner as having workers' compensation insurance at the time the contractor or subcontractor was engaged to perform work, the higher tier subcontractor, contractor, or project owner must be relieved of any and all liability under this title except as specifically provided in this section.

Section 42–1–415(A). However, to transfer liability to the Fund, the higher-tier contractor "must collect documentation of insurance . . . on a standard form acceptable to the commission." The workers' compensation commission has promulgat-

ed a regulation providing that a Certificate of Insurance "shall serve as documentation of insurance" and that the Certificate "must be dated, signed, and issued by an authorized representative of the insurance carrier for the insured." S.C.Code Reg. 67–415 (Supp.2007). In other words, liability may be transferred from the higher tier contractor to the Fund only after the higher tier contractor has properly documented the subcontractor's claim that it retains workers' compensation insurance. This statutory scheme provides an ultimate safety net for general contractors against a subcontractor's act of fraud.

In the instant case, by failing to collect a signed Certificate of Insurance form, Total Home failed to meet the requirement as set forth in the regulation. Even assuming Iyanel was not acting fraudulently in submitting the unsigned form, Total Home could have easily investigated the absence of the signature and determined that Iyanel did not have a valid policy. In our view, public funds should not be expended where Respondent could have discovered the mistake by acting in accordance with the regulations.

We recognize that the full commission found that the form was a valid documentation and, as the agency charged with administering the Workers' Compensation Act, this decision should be given great deference. *See Dunton v. S.C. Bd. of Exam'rs in Optometry*, 291 S.C. 221, 223, 353 S.E.2d 132, 133 (1987) (recognizing that the construction of a statute by the agency charged with its administration will be accorded the most respectful consideration). However, we hold that the full commission's decision should not be upheld because the interpretation is clearly contrary to its own regulation. *See Brown v. South Carolina Dep't of Health and Envtl. Control*, 348 S.C. 507, 560 S.E.2d 410 (2002) (holding that while the Court typically defers to an agency's construction of its own regulation, where the plain language of the regulation is contrary to the agency's interpretation, the Court will reject the interpretation).

## Conclusion

For the foregoing reasons, we reverse the decision of the court of appeals and hold that Total Home may not transfer liability to the Fund.

KITTREDGE, J., and Acting Justices JAMES E. MOORE and DONNA S. STROM, concur. WALLER, J., dissenting in a separate opinion.

Justice WALLER:

I respectfully dissent. In my opinion, the Court of Appeals correctly held that respondent Total Home "met all of the statutory requirements to transfer liability." *Barton v. Higgs*, 372 S.C. 109, 117, 641 S.E.2d 39, 43 (Ct.App.2007). Accordingly, I would affirm in result.

S.C.Code Ann. § 42–1–415 provides that when a subcontractor "has represented himself" to a general contractor as having workers' compensation insurance at the time the subcontractor "was engaged to perform work," the general contractor "must be relieved of any and all liability." The statute further states that the general contractor "must collect documentation of insurance ... on a standard form acceptable to the commission." S.C.Code Ann. § 42–1–415 (Supp.2008).

A review of some additional facts is in order. The president for Total Home testified that he would not have given Iyanel Enterprises a contract without obtaining a certificate of workers' compensation insurance. Likewise, the testimony of William Higgs confirmed that before Iyanel could work as a subcontractor on jobs for Total Home, Total Home required him to get a certificate of insurance. According to Higgs, he went to the Jackie Perry Insurance Agency, paid his money for the policy, and obtained the certificate. Despite the issuance of the certificate by the Perry Agency, the coverage was never bound, resulting in Iyanel not being insured on the date of Claimant's accident.

The record reflects that the Perry Agency had employed someone who issued certificates of insurance without the coverage being bound. Therefore, the only fraud that seems to have occurred in this case is by an employee of the insurance agency, not by the subcontractor. Although the majority concedes that section 42–1–415 is designed to protect a general contractor from fraud, the end result of the majority's reasoning is that Total Home becomes a victim of fraud simply because it was not committed by the subcontractor.

More importantly, however, the majority seems to gloss over the fact that the express requirements of the statute clearly were met in the instant case. Instead, the majority opinion focuses its attention on the regulation's requirements.[1] This runs contrary to settled precedent.

Although regulations authorized by the Legislature generally have the force of law, a regulation may not alter or add to a statute. *Goodman v. City of Columbia*, 318 S.C. 488, 490, 458 S.E.2d 531, 532 (1995); *Banks v. Batesburg Hauling Co.*, 202 S.C. 273, 24 S.E.2d 496, 499 (1943); see *also Society of Prof'l Journalists v. Sexton*, 283 S.C. 563, 567, 324 S.E.2d 313, 315 (1984) ("Although a regulation has the force of law, it must fall when it alters or adds to a statute.").

The *Goodman* case is instructive. *Goodman* involved S.C.Code § 42–17–50, the workers' compensation statute which allows "an application for review" of the single commissioner's order by the Full Commission. The Commission promulgated Regulation 67–701 which requires that a specific form be filed (Form 30). The petitioner in *Goodman* did not file a Form 30, but instead wrote the Commission a letter "expressing his desire to appeal." *Goodman*, 318 S.C. at 490, 458 S.E.2d at 532. On direct appeal, the Court of Appeals found the petitioner's letter did not substantially comply with section 42–17–50.

On certiorari, this Court reversed. The *Goodman* court stated that Regulation 67–701 "adds the requirement of applying for review with a particular form, thereby adding to the statute. **Insofar as Reg. 67–701 increases the threshold requirements of section 42–17–50, the specifications set**

---

1. The Fund's sole argument, with which the majority agrees, is that because the form was **unsigned,** it did not meet the requirements of the applicable regulation. Regulation 67–415 provides the following information about the term "documentation of insurance" used in the statute:

> For purposes of Section 42–1–415, the ACORD Form 25–S, Certificate of Insurance, as published by the ACORD Corporation and as issued by the insurance carrier for the insured, shall serve as documentation of insurance. The Certificate of Insurance must be dated, signed, and issued by an authorized representative of the insurance carrier for the insured.

S.C.Code Reg. 67–415(A) (Supp.2008). The ACORD Form 25–S is a standard insurance industry form.

forth in the statute must prevail." *Id.* at 490–491, 458 S.E.2d at 532 (emphasis added). The Court in *Goodman* therefore held that that petitioner's letter constituted substantial compliance with section 42–17–50. *Id.* at 491, 458 S.E.2d at 532.

The instant case is analogous to *Goodman* in that there was substantial compliance with the applicable statute. Total Home requested and received documentation of Iyanel's insurance on a form authorized by the Commission. All the substantive parts of the form were filled in—it listed Higgs as being insured with a workers' compensation policy (including a policy number and coverage dates), and also listed Total Home as the certificate holder.

The only thing missing was a signature. In my opinion, requiring such strict compliance with the regulation would only serve to frustrate legislative intent.[2] The obvious purpose of section 42–1–415 is to encourage a higher tier contractor to require proof that its subcontractors carry workers' compensation insurance. Therefore, if the higher tier contractor substantially complies with the document collection requirement, it should not be ultimately liable when the subcontractor turns out to not actually be insured. *See* § 42–1–415; *Goodman, supra.*

In addition, nowhere in the statute is there a requirement that the higher tier contractor **verify** the authenticity of the documentation of insurance. Nevertheless, the majority suggests that Total Home "could have easily investigated the absence of the signature and determined that Iyanel did not have a valid policy." First, I disagree that section 42–1–415 imposes this burden on the general contractor. Moreover, I also disagree that under the facts of this case, any such investigation would have uncovered the fraud apparently committed by a rogue employee of the insurance agency.[3]

---

2. *See, e.g., South Carolina Second Injury Fund v. American Yard Prods.,* 330 S.C. 20, 22, 496 S.E.2d 862, 863 (1998) (this Court's primary function when interpreting a statute is to ascertain and give effect to the intent of the legislature).

3. For example, if Total Home had called the Perry Agency to verify the unsigned documentation, it is quite possible that the employee who was

Put simply, the majority's focus on the absence of a signature literally "elevat[es] form over substance." *South Carolina Second Injury Fund v. American Yard Prods.*, 330 S.C. 20, 24, 496 S.E.2d 862, 864 (1998). At the very least, the majority has elevated regulation over statute, and in my opinion, this runs contrary to well-settled law. *See, e.g., Goodman, supra; Society of Prof'l Journalists v. Sexton, supra.*

In sum, because I believe the majority opinion overlooks precedent which stands for the principle that a regulation should not trump the language and intent of the statute, I respectfully dissent.

not binding the coverage could have simply lied to cover up his/her own fraudulent activity.